IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SEAN MORRISON ENTERTAINMENT, LLC,

                                                  OPINION and ORDER

                    Plaintiff,

                                           13-cv-753-bbc

        v.

O'FLAHERTY HEIM EGAN & BIRNBAUM, LTD.,
NICHOLAS D. THOMPSON, HEATHER CLARK,
ANGELA HAYES, ANGELA MAGANA,
MICHELLE OULD, PATRICIA VIDONIC
and KAITLAN YOUNG,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this case brought under Wisconsin law, plaintiff Sean Morrison Entertainment, LLC alleges that it was the principal financier of a "reality" television series called "Ultimate Women's Challenge," which featured mixed martial arts competitions between women. Plaintiff alleges that most of the named defendants were participants in the series and that defendants O'Flaherty, Heim, Egan & Birnbaum, Ltd. and Nicholas D. Thompson represented these participants in a case filed in Wisconsin state court. (Plaintiff does not describe the claims raised in the other case, but defendants say that the competitors brought breach of contract of claims against plaintiff for failing to pay them as promised.)

Plaintiff alleges that defendants revealed the results of the competitions in their state court complaint before the series aired, which was a misappropriation of a trade secret and

1

a tortious interference with plaintiff's business relationships.  In addition, plaintiff seeks a declaratory judgment that it is entitled to "commercially exploit" the competitor defendants' "names, voices, likenesses, statements and appearances." (Defendants Thompson and O'Flaherty, Heim, Egan & Birnbaum are not named on that claim.)  In a previous order entered in this case, dkt. #9, I determined that jurisdiction was present under 28 U.S.C. § 1332 after dismissing one of the defendants because she was a citizen of the same state as plaintiff.  Hart v. FedEx Ground Package Systems, Inc., 457 F.3d 675, 676 (7th Cir. 2006); Singletary v. Continental Illinois Nationa Bank & Trust Co. of Chicago, 9 F.3d 1236, 1238 (7th Cir. 1993).

Now before the court is a motion brought by defendants Thompson and O'Flaherty, Heim, Egan & Birnbaum to dismiss the claims against them for failure to state a claim upon which relief may be granted.  Dkt. #22.  (Because the other defendants have not yet filed a motion to dismiss and did not join the motion filed by defendants Thompson and O'Flaherty, Heim, Egan & Birnbaum, I will refer to the latter two defendants simply as "defendants" for the remainder of the opinion.)  In their motion, defendants argue that they cannot be held liable under Wisconsin law because plaintiff's allegations involve conduct performed in the exercise of their duties as attorneys.  Alternatively, defendants argue that plaintiff's allegations do not support a claim for misappropriation of trade secrets or tortious interference with a contract.  Because I agree with defendants' alternative argument, I am granting the motion.

OPINION

Defendants' first argument is that they are entitled to immunity under Wisconsin law under the general rule that "an attorney is not liable to third parties for acts committed in the exercise of his duties as an attorney." Yorgan v. Durkin, 2006 WI 60, ¶ 27, 290 Wis. 2d 671, 715 N.W.2d 160. The parties agree that there are exceptions to the rule, but they disagree about the scope of those exceptions. Plaintiff cites Strid v. Converse, 111 Wis. 2d 418, 429-30, 331 N.W.2d 350, 356 (1983), for the proposition that "the immunity does not apply when the attorney acts in a malicious, fraudulent or tortious manner which frustrates the administration of justice or to obtain something for the client to which the client is not justly entitled." Plaintiff focuses on the word "tortious" and argues that immunity does not apply in this case because it is bringing tort claims against defendants. Defendants cite Minerals Development & Supply Co., Inc. v. Hunton & Williams, LLP, 10-cv-00488-wmc, 2011 WL 4585321, *10 (W.D. Wis. Sept. 30, 2011) (Conley, J.), in which the court quoted the statement from Strid, but concluded that, in practice, the Wisconsin Supreme Court had limited the exception to fraudulent conduct. Because plaintiff is not alleging fraud, defendants argue that they are entitled to immunity.

My own review of the cases on the scope of immunity in this context suggests that a clear standard has eluded the Wisconsin courts thus far. Both the standard and the conclusion whether immunity should apply are often stated in general terms, leaving much room for interpretation and consideration of the facts of a particular case. E.g., Yorgan v. Durkin, 2006 WI 60, ¶¶ 27 and 35, 290 Wis.2d 671, 715 N.W.2d 160 (stating that

3

exception applies when "fraud or certain public policy considerations" are present and concluding that "public policy considerations" weighed in favor of applying immunity in that case).  In other cases, the ruling is so narrow that it is difficult to extrapolate a general rule. Auric v. Continentall Casualty Co., 111 Wis. 2d 507, 512, 331 N.W.2d 325, 328 (1983) (recognizing exception for lawyer's "negligence in drafting or supervising the execution of a will").

I need not wade into the thicket in this case.  Although immunity is sometimes described as a threshold issue, neither side argues that immunity in this context is a jurisdictional issue in the sense that it must be resolved before all other issues.  Rather, the Wisconsin courts seem to have treated the issue as one of public policy, much like the way the courts apply the concept of proximate cause in other tort cases.  Morden v. Continental AG, 2000 WI 51, ¶ 60, 235 Wis. 2d 325, 361, 611 N.W.2d 659, 676 ("Proximate cause involves public policy considerations for the court that may preclude the imposition of liability.  After the determination of the cause-in-fact of an injury, a court still may deny recovery after addressing policy considerations, or legal cause.").  Accordingly, because I conclude that plaintiff cannot state a claim upon which relief may be granted for a trade secrets violation or tortious interference with a contract, it is unnecessary to decide whether defendants are entitled to immunity.

Plaintiff's theory for its trade secrets claim is that "[t]he outcome of individual matches [in the martial arts competition] and the overall winner of the contest" were trade secrets and that defendants misappropriated those trade secrets by including them in the

state court complaint before the series aired on television.  Cpt. ¶¶ 60-71, dkt. #3.  In its

brief, plaintiff argues that defendants could have filed their lawsuit without violating the law

if they had omitted the trade secrets from their complaint or filed it under seal.

> Plaintiff's claim arises under Wis. Stat. § 134.90, which defines a trade secret as
>
> information, including a formula, pattern, compilation, program, device, method, technique or process to which all of the following apply:
>
>> 1. The information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>>
>> 2. The information is the subject of efforts to maintain its secrecy that are reasonable under the circumstances.

Wis. Stat. § 134.90(2).

Defendants argue that plaintiff cannot satisfy several aspects of this definition, but

I need only consider one of them, which is that the information is not known to "other

persons who can obtain economic value from its disclosure or use."  In particular, defendants

say that it is reasonable to infer from plaintiff's complaint that the results of the competition

were valuable information to *plaintiff*, but plaintiff does not explain how anyone else could

have profited from that information.

In its opposition brief, plaintiff's only response is to point to an allegation in its

complaint that "[t]he results of the matches and the outcome of the contests that comprise

the Series derives independent economic value from not being generally known to, and not

being readily ascertainable by proper means by, other persons who can obtain economic

value from its disclosure or use."  Cpt. ¶ 64, dkt. #3.  However, that allegation is simply a

recitation of the statute, which is not sufficient.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (complaint must allege more than "a formulaic recitation of the elements of a cause of action" to survive  motion to dismiss).  Plaintiff does not have to plead detailed facts, but it must provide enough information to raise its claim above the level of speculation.  Id.  Because plaintiff does not explain how the disclosed information would have economic value to any person or business other than plaintiff (and that proposition is not obvious from the pleadings), I am granting defendants' motion to dismiss as to this claim.    This   conclusion   makes   it   unnecessary   to   decide   whether   defendants "misappropriated" any trade secrets within the meaning of § 134.90(2).

With respect to tortious interference, plaintiff labeled this claim in its complaint as "tortious interference with prospective economic advantage" and alleged that "Defendants purposefully interfered with the Plaintiffs' legitimate expectancy of negotiating for the sale or distribution of the Series with television networks and prevented any negotiations from ripening into a valid business relationship."  Cpt. ¶ 77, dkt. #3.  More specifically, plaintiff alleged that it approached several networks to broadcast the series, but they declined on the ground that the show was "toxic" and they did not want to "risk getting involved in the litigation."  Id. at ¶ 56.  However, after defendants argued in their motion to dismiss that Wisconsin does not recognize a tort for interference with a "prospective economic advantage," Shank v. William R. Hague, Inc., 192 F.3d 675, 689 (7th Cir. 1999), plaintiff changed the focus of its claim to alleged interference with an agreement that it entered into with Tuff TV Media Group, LLC regarding the marketing of the series.

To succeed on a claim for tortious interference with a contract, the plaintiff must show: (1) a contractual relationship on behalf of the plaintiff; (2) knowledge by the defendant of the existence of the contractual relationship; (3) intentional acts on the part of the defendant to disrupt the relationship; (4) actual disruption of the relationship causing damages; and (5) lack of privilege or justification for the defendant's interference.  Burbank Grease Services, LLC v. Sokolowski, 2006 WI 103, ¶ 44, 294 Wis. 2d 274, 717 N.W.2d 781; Anderson v. Regents of the University of California, 203 Wis. 2d 469, 490, 554 N.W.2d 509 (Ct. App. 1996).  I agree with defendants that plaintiff has failed to allege any facts to support at least two of the elements.

First, plaintiff does not allege that defendants knew about plaintiff's agreement with Tuff TV when defendants filed the state court complaint.  Rather, as defendants point out, plaintiff alleges that it entered into the marketing agreement *after* defendants filed their lawsuit. Cpt. ¶¶ 32, 46.  Although interference with a prospective contract may be sufficient under Wisconsin law if it is "sufficiently concrete," Shank, 192 F.3d at 689, plaintiff alleges no facts suggesting that defendants knew about any negotiations between plaintiff and Tuff TV occurring at the time defendants filed the state court lawsuit.

In response, plaintiff argues that it adequately pleaded defendants' knowledge in paragraph 74 of its complaint:  "Defendants knew or should have known of Plaintiffs' expectancy since the Series is a television program and the only way to derive economic benefit from the Series is to distribute the Series to a broadcast and/or pay-per-view television audience or to sell the Series for such broadcast to a third party."  However,

plaintiff does not allege that Tuff TV was a network, only that it was helping plaintiff market the series, so paragraph 74 is not relevant to showing defendants' knowledge of plaintiff's agreement with Tuff TV.   Further, plaintiff cites no authority for the proposition that a party may be held liable for tortious interference with a contract if that party is not aware of the particular contract at issue, but is only aware of the *possibility* that the other party is pursuing a contract of some kind with some third party.

In any event, plaintiff has pleaded itself out of court with respect to the fourth element, which is the "actual disruption of the relationship causing damages."   To begin with, plaintiff's claim is undermined again by the allegation that defendants filed their state court lawsuit before plaintiff entered into an agreement with Tuff TV.  If Tuff TV already knew about the lawsuit when it entered into the agreement, it is difficult to see how the lawsuit disrupted the contractual relationship.  More important, plaintiff alleges that Tuff TV broke off the agreement, not because of the state court lawsuit, but because of threats it received from someone named Barry Rose.  Cpt. ¶¶ 50-53, dkt. #3.  Plaintiff does not suggest in its complaint or its brief that Rose has any affiliation with defendants, so that allegation is dispositive of this claim.

ORDER

IT IS ORDERED that the motion to dismiss filed by defendants O'Flaherty, Heim, Egan & Birnbaum, Ltd. and Nicholas D. Thompson, dkt. #22, is GRANTED and the

complaint is DISMISSED as to those defendants.

Entered this 6th day of March, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge